WALKER STEVENS CANNOM LLP
Hannah L. Cannom (SBN 245635)
hcannom@wscllp.com
Bethany M. Stevens (SBN 245672)
bstevens@wscllp.com
500 Molino Street #118
Los Angeles, CA 90013
Telephone:   (213) 337-9972
Facsimile:   (213) 403-4906

*Attorneys for Non-Party Apple Inc.*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TOT POWER CONTROL, S.L.,<br><br>Plaintiff,<br><br>v.<br><br>T-MOBILE USA, INC., ET AL<br><br>Defendants. | Case No.: 26-mc-80042<br><br>(Case No. 6:21-cv-00109-ADA pending in W.D. Tex.)<br><br>NON-PARTY APPLE INC.'S NOTICE OF MOTION AND MOTION TO QUASH PLAINTIFF'S DEPOSITION SUBPOENA; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF<br><br>Date:<br>Time: |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

Please take notice that on a date and time to be determined by the Court, California resident and non-party Apple Inc. will and hereby does move, pursuant to Federal Rule of Civil Procedure ("FRCP") 45(d), for an order quashing the Subpoena to Testify at a Deposition in a Civil Action (the "Subpoena") served upon it by Plaintiff in *TOT Power Control, S.L. v. T-Mobile USA, Inc. et al.*, Case No. 6:21-cv-00109-ADA, pending in the United States District Court for the Western District of Texas.

Apple moves to quash the Subpoena in the United States District Court for the Northern District of California, which is the district of compliance pursuant to Rule 45(c)(1) of the Federal Rules of Civil Procedure. Pursuant to Civil Local Rule 37-1, counsel met and conferred regarding this motion on February 6 and 13, 2026.

Apple makes this motion based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the concurrently filed Declaration of Hannah L. Cannom in support thereof, the files and records in this case, and any argument as may be presented at the hearing on the Motion.

## STATEMENT OF THE ISSUES

1.  Should the Court quash the Subpoena to non-party Apple because it violates FRCP 45(c) in that it: (i) improperly demands that Apple produce for a personal deposition Bernd Adler, domiciled and residing in Switzerland, regarding work that he did at Intel in 2012, (ii) improperly demands that, if Apple does not produce Mr. Adler for a deposition, Apple must educate an Apple employee on Mr. Adler's personal knowledge, and (iii) improperly demands that Apple produce a witness to testify regarding "benefits documents" that Apple has already agreed to produce because such testimony would be duplicative?

2.  Should this Court consider this Motion to Quash because this is the District where compliance is properly required pursuant to Fed. R. Civ. P. 45(d)(3)(A) and Plaintiff cannot establish exceptional circumstances to transfer the motion that outweigh Apple's interests in having the motion resolved locally?

1 | Dated this 17th day of February, 2026           WALKER STEVENS CANNOM LLP

*/s/ Hannah L. Cannom*
Hannah L. Cannom

*Attorneys for Non-Party Apple Inc.*

# TABLE OF CONTENTS

I. INTRODUCTION ………………………………………………………….…... 1

II. FACTUAL BACKGROUND …………………………………………………… 3

    A. The Apple Litigation ………………………………………………………… 3

    B. The Subpoena ………………………………………………………………..… 4

    C. The Meet and Confer Process ……………………………………...……..... 5

III. THE COURT SHOULD QUASH THE SUBPOENA …………………………. 8

    A. Legal Standard …………………………………………………………… 8

    B. The Court Should Quash the Deposition Subpoena ……...……………..… 9

        1. <u>TOT's demand for Mr. Adler's previous trial testimony remains improper</u> ……………..……………………………………………... 9

        2. <u>TOT's requests for testimony regarding the alleged "benefits" of the accused OLPC feature to Apple devices seek irrelevant, duplicative, and unnecessary third-party discovery</u> ………………………………….. 11

    C. This Court Should Resolve This Motion to Quash Because the Northern District of California Is the Legally Appropriate Venue, and No Exceptional Circumstances Exist to Justify Transfer of the Motion to the Western District of Texas ……………………………………………..…….. 12

IV. CONCLUSION ………………………………………………………………. 14

NON-PARTY APPLE INC.'S NOTICE OF MOTION AND MOTION TO QUASH PLAINTIFF'S DEPOSITION SUBPOENA; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

- i

# TABLE OF AUTHORITIES

**Cases**

*Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 300 F.R.D. 406 (C.D. Cal. 2014) ................................................................................................................................. 8, 12

*AngioScore, Inc. v. TriReme Med., Inc.*, No. 12–cv–03393–YGR (JSC), 2014 WL 6706873, (N.D. Cal. Nov. 25, 2014) ........................................................................................... 9, 12

*Audio MPEG, Inc. v. HP Inc.*, No. 16-mc-80271, 2017 WL 950847 (N.D. Cal. Mar. 10, 2017) 12

*Fujikura Ltd. v. Finisar Corp.*, No. 15-mc-80110, 2015 WL 5782351 (N.D. Cal. Oct. 5, 2015) ................................................................................................................................. 8, 11

*Gebka v. EverQuote, Inc.*, No. 1:21-MC-91391-IT, 2021 WL 3131549 (D. Mass. July 23, 2021) ....................................................................................................................................... 13

*Intermarine, LLC v. Spliethoff Bevrachtingskantoor, B.V.*, 123 F. Supp. 3d 1215 (N.D. Cal. 2015) ........................................................................................................................... 8

*Moecker v. Bank of America, N.A.*, No. 8:13-cv-01095, 2014 WL 12623809 (M.D. Fla. Mar.19, 2014) ........................................................................................................................ 9, 10

*Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637 (C.D. Cal. 2005) ..................................................... 8

*Music Grp. Macao Com. Offshore Ltd. v. Does*, 82 F.Supp.3d 979 (N.D. Cal. 2015) .................. 12

*NantWorks, LLC v. Niantic, Inc.*, 20-cv-06262-LB, 2021 WL 24850 (N.D. Cal. Jan. 4, 2021) .. 10

*Personalized Media Commc'ns, LLC v. Top Victory Elecs. (Taiwan) Co.*, No. 16-MC-80122-SK, 2016 WL 8542561 (N.D. Cal. Aug. 3, 2016) .................................................................. 13, 14

*ReefEdge Networks, LLC v. Juniper Networks, Inc.*, 29 F. Supp. 3d 455 (D. Del. 2014) ............ 10

*Sec. & Exch. Comm'n v. TCA Fund Mgmt. Grp. Corp.*, No. 20-civ-21964, 2021 WL 9440378, (S.D. Fla. June 10, 2021) ............................................................................................. 13

**Statutes**

Fed. R. Civ. P. 26 .......................................................................................................................... 8, 11

Fed. R. Civ. P. 45 ................................................................................................................. 2, 8, 12, 13

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Apple is not a party to the underlying litigation, and the parties' claims and defenses have nothing to do with Apple or its products. In fact, TOT Power Control, S.L. ("TOT" or "Plaintiff") sued Apple in a separate litigation in the United States District Court for the District of Delaware in September of 2021, at Case No. 1:21-cv-01302-MN (the "Apple Litigation").

In August 2025—after TOT's jury trial with Apple concluded[1]—TOT served the present Subpoena on Apple in TOT's separate litigation versus the carrier defendants (T-Mobile, Verizon, and AT&T). In this lawsuit, TOT accuses the carrier networks of patent infringement; handsets (including Apple handsets) are not at issue. The Subpoena sought broad document and deposition discovery related generally to the accused technology in the case (outer loop power control or "OLPC" in defendant networks); battery life and call quality of Apple handsets; and TOT and/or TOT technology, all over a twenty-year period. In the ensuing six months, and having already separately litigated TOT's claims against Apple handsets in the Apple Litigation, Apple worked diligently to reach compromise with TOT on its demands. Ultimately, and despite Apple's valid objections as to the irrelevance and overbreadth of TOT's document requests, Apple has agreed to produce two narrow sets of documents previously produced in the Apple Litigation.

Apple, however, remains at an impasse with TOT regarding its deposition demands. Despite the wording of the deposition topics in the Subpoena, it quickly became clear in meeting and conferring with TOT that what TOT really wants to obtain via the Subpoena to Apple is an opportunity to re-examine now-Swiss resident Bernd Adler, a former Intel employee and current Apple employee who was previously deposed in the Apple Litigation (when he lived in California) and testified publicly at trial in TOT's Apple Litigation last year. TOT seeks to elicit discovery from Mr. Adler for use in TOT's case against the carriers regarding work Mr. Adler

---

[1] TOT's and Apple's motions for judgment as a matter of law are currently pending in the Apple Litigation. (Apple Litig. Dkt. Nos. 481, 482.

did, statements he made, and opinions he held all while at Intel in the 2012 timeframe, well-before when he was an Apple employee. Mr. Adler, however, no longer resides in California; he resides and is domiciled in Switzerland and is outside the subpoena power of the issuing Court. Not to be deterred, and seemingly unwilling or unable to seek Mr. Adler's deposition through proper international channels, TOT now seeks to enforce its Subpoena and compel Apple to put up a witness, whether Mr. Adler or another Apple employee "educated" on Mr. Adler's personal knowledge and prior testimony. TOT's demand is improper and unsupported by the law, and the Court should reject it.

The Court should also quash the balance of TOT's deposition demand—for an Apple witness to testify regarding the alleged "benefits" of TOT's patented technology to Apple wireless devices, "such as battery life and better call quality, e.g. fewer dropped calls." Such testimony would be duplicative of the documents and authentication declaration Apple has already agreed to produce, and TOT has not demonstrated any relevance to its claims against the carrier defendants, particularly since its claims directly against Apple have already been litigated. Such unnecessary and disproportionate discovery of a non-party is improper under FRCP 45, and Apple's motion to quash TOT's deposition demands should be granted.

Finally, Plaintiff's refusal to seek enforcement of its Subpoena in this Court despite the clear instruction of Rule 45(f) is in bad faith. Despite Apple's repeated explanations and requests, TOT has chosen to simply proceed with adjudication in the Western District of Texas as if Apple were a party to the underlying litigation and Rule 45 did not apply. TOT did not seek or obtain Apple's consent to transfer the dispute to the Western District of Texas, did not seek permissive transfer of its motion by any Court in this district, and has not even attempted to establish that the requisite "exceptional circumstances" exist and outweigh Apple's interests in having the Subpoena-related dispute resolved locally. *See* Fed. R. Civ. P. 45, Advisory Comm. Notes (2013 Amendments). As a result, to avoid waiver of the jurisdiction of this Court, Apple has no choice but to file this Motion to Quash while simultaneously opposing TOT's demands in the Texas court.

## II. FACTUAL BACKGROUND

### A. The Apple Litigation

In September 2021, TOT sued Apple in Delaware, alleging that certain Apple devices infringe two U.S. patents—the same two patents of which defendants are accused of infringement in the present litigation. TOT accused Apple of infringement by virtue of "the power control processes practiced by the wireless baseband processors that Apple's mobile devices employ to access and operate over the cellular networks operated by United States carriers, including Verizon Wireless, AT&T, T-Mobile and Sprint." (Apple Litig., Dkt. No. 1, ¶ 2.)

In discovery, TOT deposed Bernd Adler, a current Apple employee who at that time resided in California, regarding work Mr. Adler did, statements he made, and opinions he held when he was an Intel employee in the 2012 timeframe. (Declaration of Hannah Cannom in Support of Non-Party Apple Inc.'s Motion to Quash ("Cannom Decl."), at ¶ 3.) Apple in-house counsel was not permitted to attend large portions of that deposition at the request of Intel's counsel because the testimony concerned Intel confidential information. (*Id*. ¶ 4, 10.) Because Apple had acquired the Intel business unit that employed Mr. Adler in or around 2019, TOT attempted to impute Intel's pre-suit knowledge of the asserted patents to Apple to claim willful infringement. But the Delaware court twice rejected TOT's attempt to allege a willfulness claim based upon this evidence. (*See e.g.* Apple Litig. Dkt. No. 246 ¶¶ 12, 14 (rejecting TOT's motion for leave to file second amended complaint alleging willfulness with prejudice and noting that "amendment would be futile"); *see also* Apple Litig. Dkt. No. 33 at 22-23.) As such, before trial, Apple moved *in limine* to preclude TOT from relying on Mr. Adler's testimony for the purposes of willfulness, and the court granted Apple's motion in part and ordered that TOT could use Mr. Adler's testimony for issues including secondary considerations, but could not raise issues of willfulness at trial. (Apple Litig., Dkt. No. 437 ¶ 5, n. 2.)

TOT called Mr. Adler as a witness at trial to testify regarding statements that he made and work that he did at Intel in the 2012 timeframe. (*See* Cannom Decl. ¶ 5, Ex. A at 350.) As

part of that testimony, TOT also introduced as exhibits certain emails sent by Mr. Adler as an Intel employee—emails produced by *Intel* in response to a third-party subpoena issued to it in the Apple Litigation. (*Id.*) During this trial testimony, TOT did not ask about, and Mr. Adler did not testify regarding, anything other than correspondence he sent and received as an Intel employee and his subjective opinions in drafting and sending that correspondence. (*Id.*) Mr. Adler's testimony addressed his views of the TOT technology in 2012 based on his review of a TOT slide deck. (*Id.*)

**B. The Subpoena**

TOT served the Subpoena on Apple on August 25, 2025, and Apple timely objected thereto on September 8, 2025. (*See* Cannom Decl. at ¶¶ 6, 7, Exs. B, C.) The Subpoena purported to require compliance in the Western District of Texas, but Apple objected to this, stating that "Apple's headquarters are located in the Northern District of California, not in the Western District of Texas where this action is pending and where compliance with the Subpoena is noticed, nor the Northern District of Texas, where TOT served the Subpoena. Pursuant to FRCP 45, the U.S. District Court for the Northern District of California is the governing district for purposes of the Subpoena and any related motions. Nothing in these objections and responses should be interpreted as a waiver of the jurisdiction of the Northern District of California." (*Id.* ¶ 7, Ex. C at 1.) Apple has maintained this objection throughout its discussions with TOT, including as recently as February 13, 2026. (*Id.* ¶ 8.)

As drafted, the Subpoena contained seven requests for documents, which generally sought broad swaths of documents and communications (specifically communications with the party defendants) related to: the accused technology in the case (outer loop power control "OLPC" in defendant networks); battery life and call quality of Apple handsets; and TOT and/or TOT technology, all over a twenty-year period. (*Id.* ¶ 6, Ex. B.) The Subpoena also included the following eight Deposition Topics:

> 1. The testing and/or relationship between (i) OLPC and/or Radio Transmission Power Control Features in any Defendant Network and (ii) battery life of any user equipment and/or mobile device sold or otherwise provided by You.

2. The relationship between battery life of any user equipment and/or mobile device sold or otherwise provided by You and customer satisfaction with any Defendant Network.

3. The testing and/or a relationship between (i) OLPC and/or Radio Transmission Power Control Features in any Defendant Network.

4. The relationship between call quality (e.g., dropped calls, or voice retainability, or connection latency) experienced with any user equipment and/or mobile device sold or otherwise provided by You and customer satisfaction with any Defendant Network.

5. The changes and/or revisions Concerning Radio Transmission Power Control Features and/or OLPC in any Defendant Network from August 17, 2005 to present, including without limitation (a) all versioning information regarding each change, (b) the reason for each change, and (c) the features, functionality, and/or improvement provided by each change.

6. All Communications with any Defendant and/or Intervenor Concerning TOT or any TOT solution or technology, including but not limited to solutions or technology Concerning Radio Transmission Power Control Features and/or OLPC.

7. The authenticity, source, meaning, creation, and maintenance of Documents provided by You in response to this subpoena.

8. How OLPC has affected or affects the operation of Your devices.

(*Id.*) Apple objected to each Request and Topic on multiple grounds including that the documents and testimony sought were irrelevant and overbroad, and on the grounds that much of the information sought was available from the defendants in the underlying action. (*Id.*)

C. **The Meet and Confer Process**

Counsel for Apple and TOT first met and conferred on September 11, 2025. (Cannom Decl. ¶ 9.) Counsel for TOT made clear that its main priority in serving the Subpoena was to obtain the Adler deposition transcript from the Apple Litigation. (*Id.*) On the next meet and confer, Apple's counsel explained that Apple did not have the Adler deposition transcript because that transcript contained only Intel Confidential Business Information, and that Intel, not Apple, maintained a copy of the transcript. (*Id.* ¶ 10.) Notably, Intel did not permit in-house

counsel for Apple to attend much of Mr. Adler's deposition—despite his position as an Apple employee— for the same reason. *Id*.)

Thereafter, on November 11, 2025, TOT asked counsel for Apple to accept service of a deposition subpoena to Bernd Adler in the carrier litigation. (*Id*. ¶ 11.) On November 18, 2026, Apple declined and informed TOT that Mr. Adler does not reside in the United States and is not subject to the subpoena power of the Court. (*Id*. ¶ 12.)

Apple did not hear from TOT regarding a deposition again until January 12, 2026, when, despite Apple having identified no documents responsive to TOT's sweeping requests, TOT requested "dates in early February when Apple is available for the deposition noticed in the subpoena." (*Id*. ¶ 13, Ex. D.) After Apple asked for clarification, counsel for TOT emailed and said that "Apple has personnel, including Mr. Adler for example, who are knowledgeable" as to the deposition topics. (*Id*.)

Counsel for TOT and Apple spoke again on January 15, 2026. (*Id*. ¶ 14.) On that call, counsel for TOT requested a witness to provide the testimony Mr. Adler had previously testified to at trial in the Apple Litigation. (*Id*.) TOT also requested Apple testimony regarding the relationship between battery life and customer satisfaction from before 2022 and information about any updates Apple has received from the defendants regarding changes to the accused features. (*Id*.) On a meet and confer on February 6, 2026, counsel for TOT reiterated its demand for an Apple deposition regarding Mr. Adler's personal knowledge. (*Id.* ¶ 15.) Counsel for Apple again informed counsel for TOT that Mr. Adler would not, and could not, be made available for a deposition in this matter, and that he lives in Switzerland. (*Id*.) Counsel for Apple also reiterated its position that if TOT intended to enforce the deposition Subpoena, the proper venue for any Subpoena-related motion practice is the Northern District of California. (*Id*.)

During this same extended meet-and-confer process, Apple worked diligently to reach compromise with TOT on its documents demands, many of which requested documents that simply did not exist. (*Id.* ¶ 16.) After months of meeting and conferring, and on the precipice of motion practice, on February 10, 2026, TOT narrowed and further clarified its document requests

to (1) compliance matrices related to various network requirements provided by the carrier defendants to Apple for competition ("carrier requirements documents") and (2) what TOT labeled "benefits documents," which TOT described as "surveys, reports, analyses, memoranda etc. regarding the importance of certain benefits, *e.g.* longer battery life, better call quality, fewer dropped calls, to Apple's handsets" that Apple had previously produced to TOT in the Apple Litigation. (Cannom Decl. ¶16, Ex. E.) On February 12, 2026, despite Apple's valid objections as to the irrelevance and overbreadth of these requests, Apple agreed to produce carrier requirements documents and benefits documents previously produced in the Apple Litigation to moot the parties' dispute regarding the Subpoena's document requests and narrow the issues before the Court.[2] (*Id.* ¶ 18.)

      As of the filing of this Motion, the disputes that remain between TOT and Apple are (i) TOT's attempt to enforce the Subpoena in the Western District of Texas, according to the district court's standing discovery procedures applicable to party discovery disputes; and (ii) TOT's continued demands for a deposition of Apple. On February 10, 2026, counsel for TOT emailed counsel for Apple indicating that TOT disagrees with Apple's position "regarding proper venue for enforcing the subpoena" and attaching an "insert regarding [the] dispute over TOT's Subpoena to Apple" to be provided to the Court in the Western District of Texas pursuant to Section IV of Judge Albright's Standing Order Governing Proceedings – Patent Cases. (*Id.* ¶ 17.) In this "insert," TOT demanded (i) an Apple witness to testify regarding Mr. Adler's knowledge reflected in his trial testimony in the Apple Litigation, and (ii) an Apple witness to testify regarding the "relationship between other benefits of the patented technology and Apple wireless devices, such as battery life and better call quality, e.g. fewer dropped calls." (*Id.*)

---

[2] To the extent TOT demands further documents from Apple, Apple reserves the right to seek to quash those demands.

NON-PARTY APPLE INC.'S NOTICE OF MOTION AND MOTION TO QUASH PLAINTIFF'S DEPOSITION SUBPOENA; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
- 7

## III. THE COURT SHOULD QUASH THE SUBPOENA

### A. Legal Standard

Federal Rules of Civil Procedure 26 and 45 work in tandem to protect non-parties from onerous and improper discovery requests. Rule 26 provides that the court must limit discovery that is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i). In turn, Rule 45 requires "[a] party or attorney responsible for issuing and serving a subpoena [to] take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." The rule further instructs that "the court for the district where compliance is required must quash or modify a subpoena that … subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A).

"The subpoena power is a substantial delegation of authority to private parties, and those who invoke it have a grave responsibility to ensure it is not abused." *Fujikura Ltd. v. Finisar Corp.*, No. 15-mc-80110, 2015 WL 5782351, at *10 (N.D. Cal. Oct. 5, 2015) quoting *Theofel v. Farey-Jones*, 359 F.3d 1066, 1074 (9th Cir. 2004). To determine if a subpoena is improper, courts will balance "the burden to the subpoenaed party against the value of the information to the serving party . . . ." *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637 (C.D. Cal. 2005). "Concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs in a Rule 45 inquiry." *Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 300 F.R.D. 406, 409 (C.D. Cal. 2014) (internal quotations and citations omitted); *see also Intermarine, LLC v. Spliethoff Bevrachtingskantoor, B.V.*, 123 F. Supp. 3d 1215, 1218-19 (N.D. Cal. 2015) ("the Ninth Circuit has long held that nonparties subject to discovery requests deserve extra protection from the courts") (citations omitted).

To obtain a deposition of an individual who resides in a foreign country, a party must comply with FRCP 28(b). Where the individual sought to be deposed resides in Switzerland, a party must proceed through the Hague Convention or a letter request to the Swiss government; a

noticed deposition is not permitted. *See, e.g. Moecker v. Bank of America, N.A.*, No. 8:13-cv-01095, 2014 WL 12623809, at *1 (M.D. Fla. Mar.19, 2014).

### B. The Court Should Quash the Deposition Subpoena

TOT's deposition topics are strikingly overbroad and seek unavailable, irrelevant, and disproportionate discovery of a foreign employee of non-party Apple. For example, Topic 5 seeks testimony regarding "the changes and/or revisions Concerning Radio Transmission Power Control Features and/or OLPC in any Defendant Network from August 17, 2005 to present, including without limitation (a) all versioning information regarding each change, (b) the reason for each change, and (c) the features, functionality, and/or improvement provided by each change." (Cannom Decl. ¶ 6, Ex. B.) The breadth of the Topics gave Apple insufficient guidance as to the scope of relevant information or how to prepare a witness for a deposition. *See AngioScore, Inc. v. TriReme Med., Inc.*, No. 12–cv–03393–YGR (JSC), 2014 WL 6706873, at *3 (N.D. Cal. Nov. 25, 2014) (granting motion to quash based in part on the overbreadth of the deposition topics).

Here TOT has narrowed its demands, but they remain improper and the Court should quash them.

#### 1. TOT's demand for Mr. Adler's previous trial testimony remains improper

TOT's deposition demand to Apple is a smoke screen to distract the Court from the fact that, at its core, the Subpoena seeks the personal-knowledge testimony of Swiss resident Bernd Adler related to work that he did during his time at Intel over a decade ago. TOT clearly wants another chance to examine Mr. Adler regarding these Intel emails that TOT views as favorable to the atmospherics of its current case against the carriers. TOT could have attempted to subpoena Mr. Adler directly through the appropriate Swiss mechanisms—indeed, it asked counsel for Apple to accept service of a subpoena to Mr. Adler—but it chose not to. (Cannom Decl. ¶ 11.) Mr. Adler does not reside in the United States, and TOT has not sought to proceed through the Hague Convention or a letter request to the Swiss government to obtain Mr. Adler's deposition.

*See, e.g. Moecker*, 2014 WL 12623809, at *1. As such, a deposition of Mr. Adler in his personal capacity is simply not permitted at this late stage of discovery.

Having failed to request discovery from Mr. Adler through the proper channels, TOT seemingly switches tack and argues that another Apple employee could be "educated" regarding work Mr. Adler did for Intel. First, this argument incorrectly assumes that Mr. Adler's knowledge regarding his work and communications at Intel from 2012 constitutes either Intel's (then) or Apple's (now) knowledge. But the trial testimony Mr. Adler provided in the Apple Litigation was inherently personal testimony. For example, TOT asked, and Mr. Adler answered, questions about what he (Mr. Adler) meant by his wording in certain emails and about his personal opinions about TOT's technology. (Cannom Decl. ¶ 5, Ex. A at 350, *et seq.*)

Further, to the extent Mr. Adler's personal knowledge can be imputed to any employer, it would be imputed to **Intel**, not Apple. Apple acquired the Intel business unit for which Mr. Adler worked in 2019—seven years after Mr. Adler's subject activities at Intel in 2012. Indeed, when TOT deposed Mr. Adler in the Apple Litigation, Intel deemed it **Intel** (not Apple) confidential information and did not permit Apple in-house counsel to attend the portions of the deposition where TOT questioned Mr. Adler regarding his 2012 work and emails. (*Id.* ¶ 10.) Similarly, the District of Delaware court in the Apple Litigation expressly and correctly rejected that TOT could impute Intel's knowledge from 2012 onto Apple as a result of the 2019 acquisition. *See e.g., NantWorks, LLC v. Niantic, Inc.*, 20-cv-06262-LB, 2021 WL 24850, at *8 (N.D. Cal. Jan. 4, 2021) (defendant's hiring of employees who previously worked for company related to plaintiff did not constitute plausible allegation of defendant's pre-suit notice of asserted patents); *ReefEdge Networks, LLC v. Juniper Networks, Inc.*, 29 F. Supp. 3d 455, 458 (D. Del. 2014) (dismissing willfulness claims based on knowledge defendant's current employee may have learned through prior employer/patent owner).

Moreover, even if Apple could "educate" another corporate representative about work Mr. Adler performed at Intel in 2012 and the trial testimony he provided in the Apple Litigation, the resulting testimony would be of no value and inadmissible. The witness would not have

knowledge of the Intel documents that were the subject of Mr. Adler's trial testimony, and that TOT would no doubt attempt to introduce during any Apple deposition. Again, the documents about which TOT intends to inquire are documents subpoenaed from and produced by Intel, not Apple, and an Apple witness would not be able to authenticate, lay the foundation for, or provide any meaningful testimony about the Intel documents. Further, the witness could not be educated on Mr. Adler's personal knowledge, opinions, or thought processes surrounding the work discussed in those documents, about which TOT and the cross-examining carrier defendants surely would ask. For example, an Apple witness could not testify without objection as to why Mr. Adler wrote that the TOT technology was a "nice idea" when presented with it during his time at Intel. (Cannom Decl. ¶ 5, Ex. A at 366.) Nor could they testify as to Mr. Adler's "shipping solution" to that of a presentation he received regarding TOT technology. (*Id.*) Where, as here, discovery demands of a third-party are disproportionate to the needs of the case, the demands should be quashed. *Fujikura Ltd.*, 2015 WL 5782351, at *3 (party seeking information via subpoena must "show how the proportionality and other requirements of Fed. R. Civ. P. 26(b)(2) are satisfied").

   2. TOT's requests for testimony regarding the alleged "benefits" of the accused OLPC feature to Apple devices seek irrelevant, duplicative, and unnecessary third-party discovery

Non-party Apple's "knowledge about the relationship between other benefits of the patented technology and Apple wireless devices" is an overbroad inquiry that is not focused on the technology at issue in the present litigation and is not proportional to the needs of the case. This is especially true where, as here, Apple has now agreed to produce the "benefits documents" sought by TOT including "surveys, etc. related to general call quality, etc., produced by Apple in the DE litigation." (Cannom Decl. ¶ 18.) These documents speak for themselves, and Apple will also provide a declaration authenticating them as Apple business records. (*Id.*) In addition, an Apple witness previously provided public trial testimony regarding these same documents in the Apple Litigation. (*Id.*)

Given the irrelevance of these documents to TOT's claims against the carrier defendants, and the fact that the documents will have already been authenticated, it is difficult to imagine what value TOT could derive from a deposition of an Apple witness that would be proportionate to and justify the imposition on Apple.[3] For its part, TOT has identified no specific testimony it needs about these documents. TOT's demand for a deposition regarding the "benefits" of certain features that are far broader than those accused of infringement is thus unnecessary and disproportionate to the needs of the case; it should be rejected. *Amini*, 300 F.R.D. at 412 ("Preparing and sitting for a deposition is always a burden, even when documents are not requested, particularly for a non-party"); *Audio MPEG, Inc. v. HP Inc.*, No. 16-mc-80271, 2017 WL 950847, at *6 (N.D. Cal. Mar. 10, 2017) (quashing deposition subpoena where, while deponent showed no compelling burden, the court acknowledged that "sitting and preparing for a deposition is always somewhat burdensome").

### C. This Court Should Resolve This Motion to Quash Because the Northern District of California Is the Legally Appropriate Venue, and No Exceptional Circumstances Exist to Justify Transfer of the Motion to the Western District of Texas

Per FRCP 45, the court where compliance is required is the proper court to address any subpoena-related motion, unless it orders transfer of the motion to the court where the action is pending. Fed. R. Civ. P. 45(c), (f). Here, TOT does not dispute that Apple is headquartered within the Northern District of California and that, accordingly, under the Rules this district is the proper place of compliance for this Subpoena. *Music Grp. Macao Com. Offshore Ltd. v. Does*, 82 F.Supp.3d 979, 982, 984 (N.D. Cal. 2015) (holding that there is "no question" that the proper district to hear a motion to compel compliance with a Rule 45 nonparty subpoena is where the nonparty is headquartered); *AngioScore*, 2014 WL 6706873, at *1 & n.1 (a Rule 45 subpoena specifying the place of compliance as more than 100 miles from nonparty's headquarters is "invalid on its face"); *see also Sec. & Exch. Comm'n v. TCA Fund Mgmt. Grp.*

---

[3] To avoid any doubt, Mr. Adler does not have knowledge of these documents, therefore TOT's demand for this testimony implicates a distinct, second knowledge base within Apple.

NON-PARTY APPLE INC.'S NOTICE OF MOTION AND MOTION TO QUASH PLAINTIFF'S DEPOSITION SUBPOENA; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
- 12

*Corp.*, No. 20-civ-21964, 2021 WL 9440378, at *1 (S.D. Fla. June 10, 2021) ("Thus, the district of compliance for a nonparty corporation is typically where the corporation is headquartered.").

This Court may transfer a subpoena-related motion to the court where the action is pending *only* with the consent of the subpoenaed party or if the court finds "exceptional circumstances." Fed. R. Civ. P. 45(f). Here, Plaintiff did not attempt to seek or obtain Apple's consent to transfer (*see* Cannom Decl. ¶ 19); therefore, transfer is only permissible if TOT can establish that "exceptional circumstances" exist. *See* Fed. R. Civ. P. 45, Advisory Comm. Notes (2013 Amendments).

TOT cannot clear this significant hurdle. Leading up to this Motion, TOT has not even attempted to identify any "exceptional circumstances" warranting transfer. Rather, TOT has mentioned that Apple has two Austin campuses, while conceding that Apple's headquarters are in this District. (*See* Cannom Decl. ¶ 20.) But that Apple has Austin campuses is immaterial—indeed, TOT has not connected Austin to any aspect of this case. *Gebka v. EverQuote, Inc.*, No. 1:21-MC-91391-IT, 2021 WL 3131549, at *3 (D. Mass. July 23, 2021). As in *Gebka*, the Apple personnel with access to its business records, electronically stored information and systems related to this case are in Cupertino, California (or Switzerland). This District is therefore the appropriate District for adjudication of the dispute.

Moreover, TOT has identified no significant benefit to having the matter transferred to the Western District of Texas. There are no pending or resolved motions before the court in the Western District of Texas that concern analogous non-party discovery, and therefore there is no risk of inconsistent rulings to warrant transfer of the Motion.

Even if exceptional circumstances did exist, "transfer is only appropriate if such interests outweigh the interests of the nonparty in having the subpoena resolved locally." *Personalized Media Commc'ns, LLC v. Top Victory Elecs. (Taiwan) Co.*, No. 16-MC-80122-SK, 2016 WL 8542561, at *1 (N.D. Cal. Aug. 3, 2016) (citing Fed. R. Civ. P. 45, Advisory Comm. Notes (2013 Amendments)). TOT has not addressed or disputed Apple's interests in having the Motion resolved locally, in this District. As this Court has recognized, "local nonparties should be

burdened as little as practicable by litigation in which they are not involved, and local resolution of the motion will typically impose a lighter burden." *Id*. at *2 (citing *Woods ex del. U.S. v. SouthernCare, Inc.*, 303 F.R.D. 405, 407-408 (N.D. Ala 2014)). This case is no exception and should remain in this District.

## IV.  CONCLUSION

For the foregoing reasons, Apple respectfully requests that the Court quash the Subpoena in its entirety.

Dated this 17th day of February, 2026                    WALKER STEVENS CANNOM LLP

                                                       */s/ Hannah L. Cannom*
                                                      Hannah L. Cannom

                                                    *Attorneys for Non-Party Apple Inc.*